UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| RYLAND B. RICE, ) | Case Number 20-60788 |
| ) | |
| _____Debtor._____ ) | |
| ) | |
| JOHN P. FITZGERALD, III, ) | |
| Acting United States Trustee For Region Four, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| REGINALD R. YANCEY, ) | |
| ) | |
| _____Respondent._____ ) | |

**MOTION TO REVIEW FEES**

John P. Fitzgerald, III, Acting United States Trustee for Region Four (the "**United States Trustee**"), by counsel, moves the Court to review the fees in this case of Reginald R. Yancey ("**Counsel**") under 11 U.S.C. §§ 105 and 329 and order appropriate relief including, but not limited to, the return of fees. In support of this motion, the United States Trustee respectfully states as follows:

JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for this motion are §§ 105(a), 329(a), and 329(b) of the Bankruptcy Code.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

BACKGROUND

4.      Before the filing of his petition, Ryland B. Rice (the "**Debtor**") owned Rice Timber Solutions, L.L.C. and it owned certain equipment with which it operated a logging business.

5.      As Rice Timber encountered certain financial setbacks, it transferred its equipment to Rice Timber and Land Solutions LLC ("**RTLS**") or Rice R.O.W., LLC ("**Rice ROW**").

6.      Brad Rice operated RTLS and Rice ROW and he and his father, Ryland F. Rice ("**Ryland Rice**"), have asserted that Ryland Rice owned RTLS and Rice ROW.

7.      On May 6, 2020, Truist Bank filed a complaint against Rice Timber and Rice ROW in the Circuit Court for Campbell County, Virginia. After a hearing held on May 8, 2020, the court found cause to:

> enter an order granting preliminary injunctive relief enjoining and restraining Defendants . . . from withholding access to the Collateral (as defined in the Complaint) and directing Defendants . . . to assist Plaintiff or its agents in obtaining access to and possession of the Collateral or, in the alternative, directing the sheriff or other proper officer to assist the Plaintiff or its agents in obtaining access to and possession of the Collateral[.]

8.      In an attempt to collect certain unpaid taxes, on May 13, 2020, Campbell County, Virginia issued a *Distress/Seizure Warrant* to be served on Rice Timber. According to the *Distress/Seizure Warrant*, Campbell County had a "first-priority claim to distraint" on the following equipment that Rice Timber had transferred to RTLS or Rice ROW:

| Year | Make | Plate | VIN |
| --- | --- | --- | --- |
| 2001 | International |  | 2HSCHASR61C012646 |
| 2001 | Freightliner | 959890TL | 1FUJAPCG11LH04755 |
| 2011 | Pitts Trailer | 959895TL | 3B6MF3666XM519658 |
| 2005 | Pitts Trailer | 959893TL | 5YJLT42222P030204 |
| 1997 | Pitts Trailer | 959890TL | 1PELP4227VP970786 |
| 2004 | Pitts Trailer | 959894TL | 5JYLT42274P040083 |
| 1974 | Great Dane Trailer | 255461TL | 64588 |

9.      On May 13, 2020, the Debtor met with Counsel concerning his financial condition and desire to retain the use of equipment that creditors sought to seize or distrain.

10. On May 13, 2020, Counsel entered into the engagement agreement attached as Exhibit 1 (the "**Engagement Agreement**") by which Counsel agreed to represent the Debtor in a chapter 13 case in return for an attorney's fee of $4,000.00.

11. On May 13, 2020, the Debtor paid Counsel $3,000.00 in cash for "Chapter 13 Bankruptcy." A copy of the receipt issued to the Debtor is attached as Exhibit 2.

12. Counsel filed a voluntary petition for relief for the Debtor under chapter 13 of the Bankruptcy Code on May 13, 2020. The petition indicated the Debtor's assets had an estimated value of "$0 - $50,000" and the amount of his debts ranged from "1,000,001 - 10 million." The petition filed on May 13, 2020, [Docket No. 1] is incorporated by reference.

13. Counsel filed the petition to stop collection activity and without conducting a reasonable investigation of the Debtor's financial affairs prior to filing the petition. In the alternative, Counsel filed the petition to stop collection activity and he knowingly filed a petition for the Debtor under chapter 13 of the Bankruptcy Code even though the Debtor's debts exceeded the relevant debt limits set forth in 11 U.S.C. § 109(e).

14. On May 22, 2020, Counsel received $2,000.00 from the Debtor for "Advise Re Chapter 11 & other Reposessions (sic)." A copy of the May 22, 2020, receipt given to the Debtor is attached as Exhibit 3.

15. On June 9, 2020, Counsel filed certain schedules, statements, and other documents [Docket No. 15] and they are incorporated by reference.

16. The Debtor disclosed on Official Form 106A/B that his house alone was worth $837,200.00. In total, the Debtor disclosed real estate valued at $934,200.00 and person property valued at $182,619.09.

17.     At all relevant times the Debtor's debts exceeded the both the secured and unsecured debt limits set forth in 11 U.S.C. § 109(e).

18.     On Official Form 106D, the Debtor disclosed secured debts totaling $1,359,387.93. None of the debts were marked contingent, unliquidated, or disputed.

19.     On Official Form 106E/F, the Debtor disclosed unsecured debts totaling $503,491.70. None of the debts were marked contingent, unliquidated, or disputed.

20.     In the Official Form 107 ("**SOFA**"), the Debtor disclosed $2,643.24 paid to Counsel in response to question # 16 (payments related to bankruptcy in the year prior to the bankruptcy).

21.     With regard to the amount and payment of fees, Counsel disclosed the following on Official Form 2030 ("**Rule 2016 Certification**"):

> 1. Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:
>
>    | | |
>    |---|---|
>    | For legal services, I have agreed to accept | $ 4,000.00 |
>    | Prior to the filing of this statement I have received | $ 2,643.24 |
>    | Balance Due | $ 1,356.76 |
>
> 2. The source of the compensation paid to me was:
>    ■ Debtor   ☐ Other (specify):
>
> 3. The source of compensation to be paid to me is:
>    ■ Debtor   ☐ Other (specify):

22.     With regard to the services included or excluded from the fee, Counsel disclosed the following on his Rule 2016 Certification:

> 5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>    a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>    b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>    c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>    d. [Other provisions as needed]
>       **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**
>
> 6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>    **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

23. On June 9, 2020, Counsel filed a chapter 13 plan on behalf of the Debtor [Docket No. 16] (the "**Plan**"), which Plan is incorporated by reference.

24. The Plan, in section 4.3, provided for $1,356.76 to be paid to Counsel through the plan.

25. On June 26, 2020, Counsel filed a chapter 11 petition on behalf of Rice Timber.

26. On June 30, 2020, Counsel filed a motion to dismiss the case on behalf of the Debtor [Docket No. 20], which motion is incorporated by reference.

27. On July 1, 2020, the Court entered an order dismissing the case [Docket Nos. 21 & 23], which order is incorporated by reference.

28. Subsequent to the closure of the Debtor's case, the United States Trustee received an allegation that Counsel had not disclosed all fees in connection with Rice Timber's case. On April 23, 2021, counsel for the United States Trustee sent Counsel a letter asking Counsel for information regarding funds received.

29. On May 3, 2021, Counsel responded as follows (the "**May 3 Letter**"):

> Dear Mr. Charboneau:
>
> In response to your April 23, 2021 letter to me, I state as follows:
>
> The May 22, 2020 receipt of $2,000.00 was used as follows:
> Balance of chapter 13 attorney fees, Case # 20-60788------$1,356.76
> Office advise concerning possible chapter 11 filing------643.24
> 　　　　　　　　　　　　　　　　　　Total　　$2,000.00
>
> Chapter 11 Case No. 20-60947 filing fee------$1,717.00
> Attorney fees------3,283.00
> 　　　　　　　　　　　　　　　　　　Total　　$5,000.00
>
> I have been doing some work for Ryland F. Rice and I will be sending him an accounting and a refund.
>
> Sincerely,
>
> 
>
> Reginald R. Yancey

30.　The representation in the May 3 Letter that Counsel applied $1,356.76 to "[b]alance of chapter 13 attorney fees, Case # 20-60788" is inconsistent with the representations in the Rule 2016 Certification and section 4.3 of the Chapter 13 Plan.

31.　On May 4, 2021, counsel for the United States Trustee sent Counsel a letter asking for a complete response to the April 23, 2020, letter to Counsel.

32.　Counsel did not respond to the United States Trustee's letter dated May 4, 2021.

33.　Thereafter, the United States Trustee moved the court for permission to conduct certain examinations pursuant to Fed. R. Bankr. P. 2004. The Court authorized certain examinations and the United States Trustee issued certain subpoenas including a subpoena to Counsel.

34.　In connection with the examinations authorized by the Court, the United States Trustee received a copy of the Engagement Agreement from the Debtor.

35.　Upon information and belief, Counsel uses in his cases a standardized engagement agreement from "Best Case."

36.　Further, Counsel appears to use a standardized Rule 2016 Statement in his cases.

37. A comparison between the Engagement Agreement and the Rule 2016 Certification indicates that Counsel did not accurately reflect in the Rule 2016 Certification the services included or excluded by the Engagement Agreement. For example, "Standard Services" included in the fee in the Engagement Agreement states that such services include, among other things, "[p]reparation and filing of motions to avoid liens and other routine pleadings[,]" and "[p]reparation of defense in the event of a motion to dismiss or motion for relief from stay[.]" The Rule 2016 Certification, however, states that "[b]y agreement with the debtor(s), the above-disclosed fee does not include the following service: . . . **judicial lien avoidances, relief from stay actions or any other adversary proceeding.**"[1]

38. After certain legal proceedings, Counsel provided certain documents to the United States Trustee and the United States Trustee examined Counsel under oath on March 11, 2022 (the "**Examination**").

39. During the Examination, Counsel explained that he used the $3,000.00 received on May 13, 2020, to pay the case filing fee ($313.00), the Debtor's credit counseling fee ($9.76), attorney fees ($2,643.24), and possibly the balance of $34.00 for a credit report.

40. During the Examination, Counsel testified about the $2,000.00 received on May 22, 2020, in a fashion that is inconsistent with his representations in the May 3 Letter concerning the application of the $2,000.00. During the Examination, the following colloquy occurred:

> Q. All right (sic). And this payment was made May 22nd; fair to say?
> A. Yes.
> Q. And $2,000 was paid?
> A. Yes.

---

[1] Counsel's use of standardized documents raises concerns of whether, in other cases, Counsel has sought additional fees for defending motions for relief from the stay despite such representation being included in the "Standard Services" by the "Best Case" agreement utilized by Counsel.

7

| | |
|---|---|
| Q. | All right (sic). Now did you ever offer to represent the son, who was Ryland B. Rice, in a Chapter 11 case? |
| A. | No. I think what – I'll try and do it from memory. I think the -- I'm trying to -- As far as the son is concerned, I believe -- Sir, I don't recall. I'm confused myself. |
| Q. | Well, you represented Rice Timber Solutions in the Chapter 11 case, did you not? |
| A. | I did. |
| Q. | All right (sic). Is that what this payment was for, was for Chapter 11 of Rice Timber Solutions? |
| A. | I don't recall. |
| Q. | All right (sic). Well it says, "Advise re Chapter 11 and other repossessions." Did you advise Ryland B. Rice, I mean, about repossessions? Was he having property repossessed? |
| A. | I don't remember at this time. But I'm thinking his father had repossessions, the father. And I believe at some point, I can't tell you the date, something like this happened. Mr. -- I'll just call him the son. The son had a piece of equipment he used. And the attorney representing a county, it might have been Campbell County, was going to levy on it and take the piece of equipment, and then the son couldn't use it in his business operations. I believe it was over that. I helped him stop that. |
| Q. | Where did you deposit this $2,000? |
| A. | I didn't deposit it. I earned the money. |
| Q. | I mean, what did you do, just put it in your wallet and walk around town with it, or did you put it in a bank? |
| A. | I don't recall. But I earned it. |
| Q. | All right (sic). So you're saying you did not put it into a trust account? |
| A. | I don't think I did. Because I have a lot -- Can I have a moment to get something to drink? |
| Q. | Sure. |
| | (Pause.) |
| A. | Yes, sire. |
| Q. | All right (sic). So do you recall the last question? |
| A. | No, I don't. Refresh my memory, please. |
| Q. | All right (sic). Did you deposit this $2,000 into a trust account? |
| A. | I don't think I did. |
| Q. | How long was your meeting on May 22nd with Mr. Rice? |
| A. | I don't remember. |
| Q. | Well, how do you know you earned the money? |
| A. | Because I had done the work. I did the work, whatever we agreed to. |
| Q. | Well, what was your hourly rate your agreed to do it? |
| A. | I could have been for his father. I don't remember. I'll be honest with you. I don't remember. |
| Q. | Did you keep any time records of your meeting? |
| A. | No. |
| Q. | So how do you know you earned the money? |

8

A.     I did - -
Q.     I'll put it to you this way. Did you spend five hours with him on May 22nd?
A.     I don't know how long we spent.
Q.     Well, how do you know you earned the money?
A.     I believe I answered that question.
Q.     No, you haven't. You have evaded it, Mr. Yancey. I mean, you say you earned the money. If you got money -- we can both agree, can we not, that if you money, unless and until it was earned, you had to put it into a trust account? If you receiving money, $2,000, and you earned some of it, but not all of it, you had to put the entire $2,000 into a trust account, at which time you withdraw only that portion you've earned. Can we agree that that is required by the Rules of Professional Conduct?
A.     I'm not agreeing to that. What I'm agreeing – stating is this. He came in for advice. I gave him legal advice. My charges for that day were $2,000 for my advice, and he paid it, and I gave him a receipt.
Q.     All right (sic). Did you quote him a flat fee? Mr. Rice, the sone I'm talking about. Did you quote him a flat fee; "You come into my office and I'm going to give you advice at $2,000"?
A.     I don't recall.
Q.     Well, how do you know then that your earned this money?
A.     Asked and answered. I don't remember. I know I gave him advice, and that's what I charged.
Q.     Who was the advice for?
A.     I don't recall.

BASIS FOR RELIEF

***Return of Fees Under 11 U.S.C. §§ 105(a) and 329(a)***

41.     The Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

42.     All attorneys representing a debtor either in or in connection with a bankruptcy case are required to disclose the compensation "paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a); *see also* Fed. R. Bankr. P. 2016.

43. Further, "[a] supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b)

44. Courts have held that inaccurate disclosures of compensation provide a basis to order refund of fees. *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045-46 (9th Cir. 1997) (holding the bankruptcy court had the inherent authority to order the disgorgement of postpetition fees and that authority was not subject to a finding that counsel's fees were unreasonable or excessive); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) (holding that "[i]n cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016, . . . courts have consistently denied all fees"); *In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995) (holding a "pattern of nondisclosure" is misconduct justifying disgorgement "even if § 329(a) would otherwise preclude recovery of fees paid earlier than one year prepetition").

45. The default remedy for improper disclosure is full refund of fees. *SE Prop. Holdings, LLC v. Stewart*, 970 F.3d 1255, 1266 (10th Cir 2020) ("The lesson of the case law discussed above is that imposition of the least possible sanction as the standard for violations of § 329(a) and Bankruptcy Rule 2016(b) would not be effective in assuring compliance. Or, to put the matter another way, the least possible sanction to assure compliance by others is generally disgorgement of the entire fee.").

46. Counsel had an obligation to ensure the timely filing of accurate statements under section 329(a) and Rule 2016(b).

47.	If Counsel did apply $1,356.76 of the $2,000.00 received on May 22, 2020, to the fees agreed to be paid by the Debtor for representation in a chapter 13 case, then Counsel made misrepresentations to the Court in the Rule 2016 Certification and the Plan.

48.	If Counsel "earned" $2,000.00 for giving advice to the Debtor on May 22, 2020, then Counsel failed to disclose the payment which would have been made in connection with the Debtor's case.

49.	Counsel failed to accurately report to the Court and United States Trustee the services included or excluded by the Engagement Agreement.

50.	For the failures in this case to accurately disclose fees and terms of agreements related to attorney compensation, cause exists to order Counsel to refund all fees received by Counsel.

### *Return of Fees Under 11 U.S.C. §§ 105(a) and 329(b)*

51.	If compensation is excessive, a court may cancel a debtor's agreement with counsel for compensation or order the return of such payment to the estate or entity that made the payment. 11 U.S.C. § 329(b); Fed. R. Bankr. P. 2017.

52.	As explained by the Court of Appeals for the Seventh Circuit:

> *Section 329(b)* authorizes the court to assess the reasonable value of the services counsel provided to debtor and to compare that value with the amount debtor paid or agreed to pay for the attorney's services. If the court determines that the fee charged by the attorney is excessive-- i.e., that it exceeds the reasonable value of the services provided--then it may cancel any compensation agreement between the attorney and his client, or it may order the return of the excessive portion of the fee to debtor's estate or to the entity making the payment. In making the "reasonable value" determination, the bankruptcy court is to be guided by section 330 of the Bankruptcy Code, which sets forth a number of factors that Congress deemed relevant to an assessment of the value of professional services.

**Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable.**

*In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998) (internal citations omitted) (emphasis added).

53. In determining the reasonableness of fees, a court can consider unethical conduct and can order return of fees "to deny the one engaged in unethical behavior the fruits of illegal and improper actions." *In re Soulisak*, 227 B.R. 77, 82 (Bankr. E.D. Va. 1998) (*citing In re Kaitangian*, 218 B.R. 102, 115 (Bankr. S.D. Cal. 1998) and *In re Gavin*, 181 B.R. 814, 821 (Bankr. E.D. Pa. 1995)).

54. Under the circumstances of this case, any fees received by Counsel are unreasonable. Among other things, at all relevant times, the Debtor was ineligible to be a debtor under chapter 13 of the Bankruptcy Code.

55. Cause exists to require Counsel to show that fees received in this case are not excessive and to order the refund of any excessive fees pursuant to 11 U.S.C. § 329(b).

56. The United States Trustee reserves the right to amend or supplement this motion.

WHEREFORE, the United States Trustee, by counsel, moves the Court to review Counsel's transactions with the Debtor and order the return of fees received pursuant to 11 U.S.C. §§ 105 and 329.

Date: April 26, 2022     Respectfully submitted,

United States Trustee

By: /s/ W. Joel Charboneau
Trial Attorney for the United States Trustee

## NOTICE OF HEARING

PLEASE TAKE NOTICE that the United States Trustee has filed a *Motion To Review Fees* (the "Motion"). Unless an order is entered prior to the hearing, a **preliminary hearing** on the Motion will be held on **May 19, 2022, at 10:00 a.m.** in the United States Bankruptcy Court via Zoom at https://vawb-uscourts-gov.zoomgov.com/j/1603692643. The Meeting ID is 160 369 2643.

**If you do not want the Court to grant the relief requested in the motion, then, pursuant to Local Rule 9013-1, you must file a response not later than 7 days prior to the scheduled hearing. Absent a timely filed response, a proposed order may be tendered to the Court granting the relief requested in the Motion.**

### CERTIFICATE OF SERVICE

I certify that on April 26, 2022, I caused the foregoing to be electronically filed with the United States Bankruptcy Court for the Western District of Virginia which should have caused electronic notifications of filing to be served on all registered users of the CM/ECF System that have appeared in this case including Counsel.

/s/ W. Joel Charboneau

W. Joel Charboneau (VSB #68025)
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2699
joel.charboneau@usdoj.gov
Trial Attorney for the United States Trustee